FILED

November 14, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:24 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Debbie Rule, | ) | Docket No. 2016-06-1889 |
|         Employee, | ) | |
| v. | ) | |
| naviHealth, | ) | State File No. 52579-2016 |
|         Employer, | ) | |
| And | ) | |
| XL Specialty Insurance, | ) | Judge Kenneth M. Switzer |
|         Carrier. | ) | |

## COMPENSATION HEARING ORDER DENYING BENEFITS

This case came before the undersigned Workers' Compensation Judge on November 7 for a compensation hearing. The central legal issue is the compensability of Ms. Rule's claim for an injury, which occurred when she fell while visiting a doctor's office. The Court finds Ms. Rule failed to satisfy her burden to show that the injury arose primarily out of and in the course and scope of her employment and denies her claim.

### History of Claim

Ms. Rule began working for naviHealth in 2015 as a health service coordinator. She testified that despite health problems unrelated to work, she was one of the two highest producers within her team.

On May 16, 2016, Ms. Rule experienced an allergic reaction after her supervisor operated a fragrance burner to ward off an unpleasant odor.[1] She asked her supervisor to turn it off. She refused but suggested that Ms. Rule work in an office where she could not smell the fragrance. Ms. Rule agreed and felt better working in that area for several hours. The supervisor informed her she turned it off and Ms. Rule could return to her

---

[1] Ms. Rule characterized her relationship with her supervisor as "a rough road" and "up and down." She testified at length about disagreements between them. However, the Court does not find this testimony helpful toward determining the compensability of Mr. Rule's claim and therefore declines to consider it or recount it in this Order.

1

desk. Upon her return, Ms. Rule immediately felt like she could not breathe. She went to lunch and "felt funny," warm and flushed. After she returned to work, she felt worse and immediately could not breathe again, so Ms. Rule left work after e-mailing her supervisor. Ms. Rule drove from Brentwood to an urgent care clinic in Mt. Juliet.

Ms. Rule saw physician assistant Blake Carden. She provided a history of "an allergic reaction from some smell in the office." Mr. Carden diagnosed shortness of breath and flushing and recommended Ms. Rule take Benadryl if her symptoms returned. He noted Ms. Rule experienced no dizziness, headaches or shortness of breath "when walking." Ms. Rule testified that she remembered telling him before she left the exam room that she felt better but she still felt "a little dizzy."

Ms. Rule left the examination room and walked down a hallway when she fell. Specifically, she said, "As I turned, I felt my foot do something. And then, the next thing I knew—because I was walking pretty fast—I was walking pretty fast—and the next thing I knew, I was flying through the air. Literally." Ms. Rule slammed her head on a door frame and landed on her right knee.

Several clinic employees came to her assistance. Ashley Jeffries, the clinic's assistant office manager, testified that she did not witness Ms. Rule's fall but overheard a "screech" from a shoe skid and then a "plop." She documented the fall on the same day in an incident report, writing, "Pt. shoe caused her to trip while walking out clinic door to lobby." Ms. Jeffries also wrote, "She stated that she was going to return her shoes to Belk; that she had tripped when wearing them several times. She even tripped at Belk 1 month after purchasing them." Ms. Rule did not recall the details of the post-fall conversation with Ms. Jeffries. She acknowledged the previous fall at Belk wearing the same shoes and that Ms. Jeffries had no personal knowledge about where she bought her shoes. Ms. Rule further conceded that a few weeks after the fall, she started wondering if the shoes were responsible for her fall, so she returned them.

Ms. Rule returned to see Mr. Carden the next day. He excused her from work for May 17-19. Ms. Rule intended to report to work the following Monday, but that morning she still felt severe pain from the fall and stress from her disagreements with her supervisor, so she resigned.

naviHealth denied Ms. Rule's claim. Afterward, she sought unauthorized care from Dr. Christopher Cook, who ultimately performed an arthroscopy on her knee.[2] He related the injury to work, noting, "Pt describes a fall onto knee resulting from dizziness d/t workplace fumes." Dr. Cook testified that if her history was incorrect in any way, it would "have an impact" on his causation and impairment opinions. He assigned a one-

---

[2] Ms. Rule testified she suffered headaches and memory loss as a result of the fall. She saw a neurologist about her head injury but did not file a C-32. The Court considers that claim withdrawn.

percent impairment rating to the body as a whole. Dr. Cook testified that he would have returned her to full-duty work four weeks after surgery, despite a different notation on a C-32 form.

Ms. Rule still experiences pain in her knee. She contended that, but for her supervisor's decision to continue operating the fragrance burner, she would not have suffered the allergic reaction and ultimately the fall at the clinic. She relied on her testimony and Dr. Cook's opinion on causation contained in the C-32.

naviHeath raised three arguments to rebut Ms. Rule's position on causation. First, Dr. Cook testified that he reached his conclusion based on her representation that the mechanism of injury was a fall and that if her history were incorrect, it would affect his opinion regarding causation and impairment. Second, naviHealth observed that Mr. Carden testified that before the fall, Ms. Rule "[r]eported no dizziness at the time of the exam," and, "she was healthy and not struggling with balance at that time." It asserted that she and Mr. Carden gave contrary testimony about whether she experienced dizziness as she left the exam room. naviHealth acknowledged that Mr. Carden cannot legally give an opinion on causation but argued that as a medical professional, he is in a sound position to know when a patient experiences dizziness. Third, naviHealth argued that Ms. Rule's fall was idiopathic and she tripped due to her ill-fitting shoes.[3]

### Findings of Fact and Conclusions of Law

Ms. Rule has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). She must establish by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2017) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence."). This burden begins with proof that she suffered a compensable injury.

An "injury" means one by accident arising primarily out of and in the course and scope of employment. The employee must be shown by a preponderance of the evidence that the employment contributed more than fifty percent in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(14). In contrast, an idiopathic injury is one that has an unexplained origin or cause and generally does not arise out of the employment unless "some condition of the employment presents a peculiar or

---

[3] In the alternative, naviHealth argued that, should the Court find the claim compensable, the weekly compensation rate of $422.59 should be reduced due to Ms. Rule's receipt of Social Security retirement benefits in the weekly amount of $160.85. Ms. Rule conceded she drew these benefits while working for naviHealth.

additional hazard." *McCaffrey v. Cardinal Logistics,* 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at \*9 (Dec. 10, 2015).

Here, Ms. Rule testified that she became ill after smelling the fragrance burner. However, she acknowledged telling Mr. Carden she felt "much better" after the examination. She maintained that she still felt dizzy at that point; Mr. Carden's notes and testimony dispute her contention. NaviHealth persuasively argued that Mr. Carden, as a medical professional, is in a strong position to discern whether a patient experienced dizziness.

Further, Ms. Rule testified that she could not recall discussing her shoes with Ms. Jeffries. Her inability to recall the details of the discussion about her shoes with Ms. Jeffries does not mean the conversation did not occur. Ms. Rule acknowledged that Ms. Jeffries could not have known where she purchased her shoes if she had not told her. The Court observed Ms. Jeffries' demeanor and finds her testimony credible. Ms. Rule is also credible. However, the incident report supports Ms. Jeffries' testimony that the conversation about Ms. Rule's shoes took place.

Finally, while Dr. Cook found the accident work-related, he tempered that conclusion with the caveat that he based it solely on the history Ms. Rule offered. The Court gives due consideration to Ms. Rule's testimony and arguments, and finds her sincere in her belief that her supervisor's decision to operate the fragrance burner ultimately caused her accident. However, after weighing all the evidence, the Court cannot find that Ms. Rule satisfied her burden to show by a preponderance of the evidence that her allergic reaction to the fragrance burner action was more than fifty percent responsible for her fall that resulted in her knee injury, considering all causes.

IT IS, THEREFORE, ORDERED that Ms. Rule's claim is DENIED on the grounds of compensability. The filing fee for this case is taxed to naviHealth or its carrier under Rule 0800-02-21-.07 (2016) of the Tennessee Compilation Rules and Regulations, to be paid within five business days of entry of this order. If no appeal is taken, the order shall become final after thirty days.

### Alternative Findings of Fact

Solely in the event that an appellate body finds error in the compensability holding, the Court makes the following findings of fact for the purpose of judicial economy. *See Cunningham v. Shelton Sec. Serv.,* 46 S.W.3d 131, 137-138 (Tenn. 2001). (Trial courts should "hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review.") Ms. Rule is entitled to four weeks of past temporary total disability benefits in accordance with Dr. Cook's

testimony, or $1,368.68.[4]   The Court further finds Ms. Rule suffered a permanent impairment of one percent to the body as a whole, which entitles her to $1,539.77 in permanent partial disability benefits.  Ms. Rule did not request, nor did she introduce any proof, of her past medical expenses, and the Court considers them waived.

**ENTERED this the 14th day of November, 2017.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Evidence[5]
1. Deposition of Blake Carden, P.A.
2. Deposition of Dr. Christopher Cook
3. First Report of Injury (handwritten)
4. First Report of Injury (electronic)
5. Letter from carrier to Ms. Rule; denial
6. Notice of Denial
7. Wage statement and supporting documentation
8. Dr. Zhou records
9. Letter from Vcs Group LLC to Ms. Rule (identification only)
10. Injury Incident Report Form
11. Letter from Ms. Jeffries to Ms. Rule (identification only)
12. Emails between Ms. Rule and mediator (identification only)

Technical Record
1. Petition for Benefit Determination
2. Employee's Pre-Mediation Statement
3. Employer's Pre-Mediation Statement

---

[4] naviHealth's counsel represented to the Court that Ms. Rule testified in her deposition to receiving $697.00 monthly from Social Security, so that annually she received $8,64.00, or weekly she received $160.85.  The Workers' Compensation Law allows an employer credit in the amount of fifty percent of the benefit.  Tenn. Code Ann. § 50-6-207(4)(A)(i).  In this case, the credit is $80.42, which reduces Ms. Rule's weekly compensation rate to $342.17.

[5] The Court did not admit into evidence exhibits 5, 7 and 8 to Dr. Cook's deposition.  During closing arguments and after the close of proof, Ms. Rule referenced documents she filed in response to naviHealth's summary judgment motion.  The Court did not consider these documents.

4. Employee's Response
5. Dispute Certification Notice
6. Request for Initial Hearing
7. Order Setting Compensation Hearing
8. Employee's Pre-Hearing Statement
9. Employer's Pre-Hearing Statement
10. Employer's Exhibits/Witnesses
11. Employer's Brief

## CERTIFICATE OF SERVICE

I certify that a copy of the Compensation Hearing Order was sent to the following recipients by these methods of service on this the 14th day of November, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Debbie Rule, Employee | X | | X | Ddr431333@outlook.com; 314 Pennsylvania Ave., Lebanon, TN, 37087 |
| Jeffrey Foster, Employer's Attorney | | | X | jfoster@morganakins.com jtallent@morganakins.com |

Penny Shrum, Clerk of Court
wc.courtclerk@tn.gov

6